# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# CIVIL ACTION NO. 1:23-CV-00027-HBB

**KEALII C.** [1]                                                                                                            **PLAINTIFF**

**VS.**

**MARTIN O'MALLEY, COMMISSIONER**
**SOCIAL SECURITY**[2]                                                                                          **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the Complaint (DN 1) of Kealii C. ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Plaintiff (DN 11) and Defendant (DN 16) have each filed a Fact and Law Summary, and Plaintiff has filed a reply (DN 17). For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 9). By Order entered May 5, 2023 (DN 10), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

---

1 Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.
2 Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

FINDINGS OF FACT

On December 10, 2019, Plaintiff protectively filed an application for Supplemental Security Income (Tr. 15, 278-87).³ Plaintiff alleged that she became disabled on October 24, 2019, as a result of diabetes; high blood pressure; peripheral neuropathy; lung/salivary gland cancer, stage 2; post-traumatic stress disorder ("PTSD"); anxiety disorder; depression; back problem; and insomnia (Tr. 15, 143, 162, 306). The application was denied initially on April 20, 2021, and upon reconsideration on November 4, 2021 (Tr. 15, 160, 172).⁴ On November 18, 2021, Plaintiff filed a written request for hearing (Tr. 15, 202).

On March 9, 2022, Administrative Law Judge Jerry Lovitt ("ALJ") conducted a telephonic hearing due to the extraordinary circumstances presented by the COVID-19 pandemic (Tr. 15, 37). Plaintiff and her counsel, M. Gail Wilson, participated telephonically (Id.). Marilyn Stroud, an impartial vocational expert, also participated telephonically and testified during the hearing (Id.).

In a decision dated May 2, 2022, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 15-28). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since December 10, 2019, the application date (Tr. 17). At the second step, the ALJ determined that Plaintiff has the following severe impairments: Type II diabetes mellitus with associated neuropathy; right foot recurrent ulcerations; degenerative joint disease; sleep dysfunction; benign glandular neoplasm; neurocognitive dysfunction; anxiety; depression; and PTSD (Tr. 18). The ALJ also determined that Plaintiff has the following "non-severe" impairments: hypertension and headaches (Id.).

---

3 The ALJ indicates the application was filed on December 10, 2019 (Tr. 15). As the received date stamp indicates December 16, 2019, the application was apparently protectively filed on December 10, 2019.
4 The ALJ indicates the application was denied initially on April 22, 2021 (Tr. 15). As the Disability Determination and Transmittal form indicates April 20, 2021 (Tr. 160), the undersigned has used that date.

Additionally, the ALJ determined that Plaintiff's reported dizziness is a non-medically determinable impairment (Id.). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 19).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except for the following additional limitations: she can occasionally climb ramps/stairs, balance, stoop, kneel, and crouch; she should do no crawling, and no climbing of ladders, ropes, or scaffolds; she should have no exposure to unprotected heights, and no more than occasional exposure to temperature extremes, humidity, pulmonary irritants or poor ventilation conditions, vibrations and workplace hazards such as dangerous machinery with moving parts that fail to stop when human contact is lost; she can occasionally push foot controls with the right lower extremity, and can frequently perform bilateral handling and fine fingering; she is able to understand, remember, and carry out simple, routine instructions; she can sustain concentration completing simple, repetitive, routine tasks; and she can use judgment in making simple work-related decisions consistent with this type of work; she requires an occupation with an established and predictable routine with set procedures in place, and with minimal changes occurring during the workday, and with no manufacturing sector fast-paced production line or production pace assembly line work she can have frequent contact with supervisors and coworkers, and occasional, superficial contact with the general public (Tr. 21). Additionally, the ALJ determined that Plaintiff is unable to perform any past relevant work (Tr. 27).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 27-28). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from December 10, 2019, through the date of the decision, May 2, 2022 (Tr. 28).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 266-72). The Appeals Council denied Plaintiff's request for review (Tr. 1-3).

CONCLUSIONS OF LAW

A. Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Hum. Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Hum. Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Hum. Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton, 2 F.3d at 695-96.

### B. The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. § 1381 et seq. (Title XVI Supplemental Security Income). Under this subchapter, a claimant is "disabled" if he is:

> [U]nable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 1382c(a)(3)(A) (Title XVI); 20 C.F.R. § 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. § 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

> 3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?
>
> 4) Does the claimant have the RFC to return to his or her past relevant work?
>
> 5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

### C. Plaintiff's Challenges to the ALJ's Decision

*1. The ALJ Failed to Find the Headaches are Severe Impairments*

Plaintiff contends the ALJ erred in failing to find his migraine headaches are a severe impairment (DN 11 PageID # 1913). In support of his position, Plaintiff relies on his own testimony about the frequency and nature of the migraine headaches as well as his primary health care provider diagnosing migraine headaches and prescribing Imitrex 100 mg to treat the condition (Id.) (citing Tr. 57-58, 1753, 1767).

In response, Defendant asserts that the ALJ considered the above cited evidence and found it did not demonstrate Plaintiff's migraine headaches constitute as a severe impairment that has lasted or is expected to last twelve continuous months (DN 16 PageID # 1931-34) (citing Tr. 18. 57-58, 762, 772, 1737, 1755, 1767). Defendant suggests that Plaintiff has not identified any medical evidence showing that his headaches significantly limited his ability to perform basic work activities (Id. at PageID # 1934). Alternatively, Defendant argues where, as here, the ALJ finds at least one severe impairment and proceeds to the next steps in the sequential evaluation process, the "failure to find additional severe impairments . . . does not constitute reversible error" (Id. at

PageID # 1934-35). Kirkland v. Comm'r of Soc. Sec., 528 F. App' x 425, 427 (6th Cir. 2013) (quoting Fisk v. Astrue, 253 F. App' x 580, 583 (6th Cir. 2007)).

In reply, Plaintiff asserts that the ALJ failed to appreciate the significance of Plaintiff's testimony indicating he would be incapacitated for two or more days per month because of his migraine headaches (DN 17 PageID # 1946-47). Further, Plaintiff suggests that his testimony is consistent with the medical evidence and his being prescribed Imitrex (Id.).

At the second step in the sequential evaluation process a claimant must demonstrate he suffers from a "severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . ." 20 C.F.R. § 416.920(a)(4)(ii); Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). To satisfy the "severe" requirement the claimant must demonstrate the impairment or combination of impairments "significantly limit" his physical or mental ability to do "basic work activities." 20 C.F.R. § 416.922(a).[5] The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.922(b).[6] To satisfy the "medically determinable" requirement the claimant must present objective medical evidence (i.e., signs, symptoms, and

---

5 Notably:
> [A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability, regardless of age, education, and experience.

Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988) (citation omitted).

6 Examples of basic work activities are as follows:
  (1) Physical functions such as walking, standing, sitting, lifting, pushing, reaching, carrying, or handling;
  (2) Capacities for seeing, hearing, and speaking;
  (3) Understanding, carrying out, and remembering simple instructions;
  (4) Use of judgment;
  (5) Responding appropriately to supervision, co-workers and usual work situations; and
  (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.922(b).

laboratory findings) that demonstrates the existence of a physical or mental impairment. 20 C.F.R. § 416.921; Social Security Ruling 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017). To satisfy the "duration" requirement the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909.

At step two, the ALJ found that Plaintiff's headaches are a non-severe impairment (Tr. 18). The ALJ provided the following explanation in support of his determination:

> With regard to the claimant's headaches, although the claimant did not allege headaches in his request for disability income, at his hearing, the claimant testified that he has headaches. Ex. 2E/2; hearing testimony. Records indicate that the claimant's headaches were treated with medications. Ex. 7F/25, 35; 17F/54; 18F/4, 16. These impairments are not considered severe because the record does not establish that they cause any significant limitation in the claimant's ability to perform basic work activities for 12 months as required by the regulations.

(Tr. 18). Essentially, Plaintiff argues his testimony should have been enough evidence for the ALJ to conclude that the headaches significantly limit his ability to do basic work activities. But Plaintiff fails to appreciate that at step five the ALJ evaluated the intensity, persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit his work-related activities (Tr. 22). The ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record (Tr. 22-26). In sum, when the ALJ's decision is considered holistically, substantial evidence in the record supports the ALJ's finding that Plaintiff's migraine headaches are not a severe impairment during the time frame addressed by the ALJ's decision.

*2. The ALJ Failed to Find the Consultative Examiner's Opinion Persuasive*

Plaintiff argues that the ALJ erred when he found not persuasive the opinions of the consultative examiner, Jennifer Fishkoff, Psy.D. (DN 11 PageID # 1914-15). More specifically, Plaintiff challenges the ALJ's determination that "Dr. Fishkoff's opinions are vague, lack concrete functional limitations, and include conclusions reserved to the Commissioner" (DN 11 PageID # 1914-15) (quoting Tr. 26). Plaintiff asserts that Dr. Fishkoff's opinions are supported by other mental health evidence in the record, and they are neither vague nor without concrete functional limitations (Id.).

In response, Defendant contends that the ALJ's persuasiveness findings are supported by substantial evidence and comport with applicable law (DN 16 PageID # 1935-40) (citing Tr. 23-26, 577-85, 20 C.F.R. § 416.920c(b)(2)). Defendant explains why the limitations expressed by Dr. Fishkoff were vague and identifies the evidence that undermines the doctor's opinions (Id.).

Plaintiff filed a reply memorandum (DN 17 PageID # 1946-47). He has not, however, replied to Defendant's argument on this issue (Id.).

The new regulations for evaluating medical opinions and prior administrative medical findings are applicable to Plaintiff's case because he filed his application after March 27, 2017 (Tr. 15, 278-87). *See* 20 C.F.R. § 416.920c. The new regulations explicitly indicate "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),"[7] in the record, even if it comes from a

---

[7] At the initial and reconsideration levels State agency medical and psychological consultants review the evidence in the case record and make "administrative medical findings." 20 C.F.R. § 416.913a(a)(1). Administrative law judges "must consider" the administrative medical findings of non-examining state agency medical or psychological consultants according to the new regulation. 20 C.F.R. § 416.913a(b)(1).

treating medical source. 20 C.F.R. § 416.920c(a).[8] Instead, Administrative Law Judges will now evaluate the "persuasiveness" of medical opinions and prior administrative medical findings by utilizing the five factors listed in paragraphs (c)(1) through (c)(5) of the regulation. 20 C.F.R. § 416.920c(a) and (b). The five factors are supportability, consistency, relationship with the claimant, specialization, and other factors. 20 C.F.R. § 416.920c(c)(1)-(5).[9] Of these five factors, the two most important are supportability and consistency. 20 C.F.R. § 416.920c(a) and (b)(2). Further, the regulation requires Administrative Law Judges to explain how they considered the supportability and consistency factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 416.920c(b)(2). Notably, under the regulations Administrative Law Judges "may, but are not required to, explain how" they considered the three other factors in determining the persuasiveness of the medical source's opinion. 20 C.F.R. § 416.920c(b)(2).

With regard to Plaintiff's mental impairments, the ALJ observed that the medical records documented his anxiety, depression, and PTSD (Tr. 23) (citing Exs. 9, 10). The ALJ observed that despite these impairments, throughout 2020, during examinations Plaintiff was cooperative, and had appropriate behavior; he had normal speech, normal perception and was oriented; his memory and judgment were intact, his thought content appropriate and his thought process, logical and linear (Id.) (citing Ex. 9F/26, 40-41, 56-57, 73, 78-79).

---

8 The language quoted above indicates that the new regulation has done away with the controlling weight rule in 20 C.F.R. § 416.927(c)(2).

9 In assessing the relationship with the client, consideration should be given to the following: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 416.920c(c)(3)(i)-(v).

10

The ALJ's comprehensive discussion of Dr. Fishkoff's reads as follows:

> On April 13, 2021, the claimant underwent a consultative exam with Jennifer Fishkoff, Psy.D. Ex. 4F/1-9. On exam, the claimant was able to express himself in an adequate manner. He reported that he had post-traumatic stress disorder and that he couldn't handle stress or concentrate. Ex. 4F/4. The claimant was oriented and on the digit span task, was able to recall two sets of four digits forward and two sets of three digits in reverse. The claimant's short-term memory was impaired. On a test of recall, he made an effort to recall two out of three objects after a 5-minute period. Recall for personal information was poor. His fund of information was assessed to be below average. He answered that there are 12 months in a year; when asked how many days were in a year, he stated "That's a good question." He paused for a while, then said, "I don't remember." He said that the sun sets in the "that way." When further queried, he stated, "south." He knew the current President of the United States. The claimant's calculation skills were assessed to be within normal limits although he took longer to answer than would be expected from the average individual. When asked what 6 x 6 is, he replied "36." He answered 7 x 9 is "63." When asked to complete serial subtractions of 3s from 30, he was very slow to do so and counted on his fingers. Concentration was below average. Abstract reasoning abilities were assessed to be below average. He answered an orange and a banana are alike because "you eat them." Judgment was assessed to be below average. He answered that if one discovered a fire in a theater, they should "tell somebody," and if one lost a library book, they should "tell somebody." Ex. 4F/5. Dr. Fishkoff noted that she had no medical records to review. She diagnosed the claimant with depressive disorder, mild neurocognitive disorder, mild posttraumatic stress disorder and chronic pain from multiple medical problems. Ex. 4F/7.

(Id.). The ALJ contrasted Dr. Fishkoff's findings with treating source examination findings from August, November, and December of 2021 and February and March of 2022 that indicated Plaintiff was fully oriented; had a normal mood and affect; exhibited normal insight and judgment; was goal directed; and his thought content was logical (Id.) (citing Exs. 10F/36-37, 43; 11F/6; 17F/62-63, 16-17; 18F/25; 19/2).

At a subsequent point in the decision, the ALJ provided the following discussion of the prior administrative psychological findings of the State agency psychological consultants:

> Psychological consultants at the initial and reconsideration levels, determined that the claimant would be able to understand and remember simple instructions; sustain attention for extended periods of two-hour segments for simple tasks; tolerate frequent contact with coworkers, supervisors, and the public; and adapt to gradual, infrequent changes as needed within the above parameters. Exs. 1A/15; 3A/8. The undersigned find the opinions of the consultants generally persuasive. Although the consultants are non-treating and non-examining sources, their opinions are supported by their review of the underlying record, a detailed explanation and their familiarity with Social Security regulations and program standards. Furthermore, their opinions are generally consistent with the evidence of the claimant's neurocognitive dysfunction, anxiety, depression, and post-traumatic stress disorder. Although limitations are warranted, the claimant's impairments do not completely preclude his ability to work. In particular, the undersigned notes that the claimant generally had unremarkable mental status exams. Ex. 9F/26, 40-41, 56-57, 73, 78-79; 10F/36-37, 43; 11F/6; 17F/16-17, 62-63; 18F/25; 19F/2. The undersigned further notes that the claimant was able to work on his car, clean and play games on his computer. Exs. 1F/18, 33; 9F/100, 105; 10F/24; 17F/1. Nonetheless, the undersigned finds that additionally limiting the claimant to only occasionally interacting with the public is also warranted to account for the claimant's mental health impairments. Ex. 9F/26, 40-41, 56-57, 73, 78-79; 10F/36-37, 43; 11F/6; 17F/16-17, 62-63; 18F/25; 19F/2.

(Tr. 25-26).

The ALJ then made the following assessment of Dr. Fishkoff's opinions:

> In April 2021, Dr. Fishkoff, who performed a consultative exam on the claimant, opined that the claimant's ability to tolerate frustration, conform to social standards and maintain employment was severely impaired. Further, the claimant's ability to understand, retain and follow instructions, and sustain attention to perform simple and repetitive tasks was severely impaired. Dr. Fishkoff further opined that the claimant did not appear capable of tolerating the stress and pressures associated with day-to-day work activity. Ex. 4F/7-8. The undersigned does not find the opinions of Dr. Fishkoff

> persuasive. Dr. Fishkoff's opinions are vague, lack concrete functional limitations, and include conclusions reserved to the Commissioner. Although supported by an examination of the claimant, Dr. Fishkoff acknowledged that she had no medical or formal treatment records to review. Moreover, Dr. Fishkoff's opinions are not consistent with the record, including the claimant's generally unremarkable mental status exams. Ex. 9F/26, 40-41, 56-57, 73, 78-79; 10F/36-37, 43; 11F/6; 17F/16-17, 62-63; 18F/25; 19F/2.

(Tr. 26). The ALJ explained how he considered the supportability and consistency factors in determining the persuasiveness of Dr. Fishkoff's opinions. 20 C.F.R. § 416.920c(b)(2). The ALJ's comment—Dr. Fishkoff's opinions are vague—refers to her use of the term "severely impaired" without providing a definition of that term. The ALJ's reference to conclusions reserved to the Commissioner pertain to Dr. Fishkoff's opinions about Plaintiff's ability to maintain employment and tolerate the stress and pressures associated with day-to-day work activity (Tr. 26, 583-84). The regulations indicate such opinions are "inherently neither valuable nor persuasive" on the issue of whether a claimant is disabled because this is a determination reserved to the Commissioner. 20 C.F.R. § 404.920b(c)(3)(i). Consequently, Plaintiff is not entitled to relief on this claim.

    3. *Side Effects of Medications*

Plaintiff contends that the ALJ violated 20 C.F.R. § 416.929 and SSR 96-7p by failing to even consider the side effects of Plaintiff's medications (DN 11 PageID # 1915). Plaintiff claims to have "stated that his medications cause difficulty with balance, cause dizziness and result in him being groggy, sleepy, and fatigued" (Id.). Plaintiff asserts, "[t]he side effects are noted in the medical records of Bentley O'Dell, his treating health care provider" (Id.).

13

Defendant points out that Plaintiff fails to cite a single page of the record substantiating his claims about the medication side effects (DN 16 PageID # 1940). Defendant asserts that Plaintiff's perfunctory argument should be deemed waived because "it is not his Commissioner's nor the Court's job to comb through the record to find evidence that supports Plaintiff's position" (Id.) (citing Brenay v. Schartow, 709 F. App'x 331, 337 (6th Cir. 2017) (collecting cases) (holding that perfunctory arguments are deemed waived, as "it is not for the court to search the record and construct arguments. Parties must do that for themselves."); Moore v. Comm'r of Soc. Sec., 573 F. App'x 540, 543 (6th Cir. 2014) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to…put flesh on its bones."). Alternatively, Defendant argues because Plaintiff has cited no statements, testimony, or medical records documenting the purported medication side effects, he has failed to demonstrate the ALJ erred and that Plaintiff has been prejudiced (Id. at PageID # 1941-44).

It is well-established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Layne, 192 F.3d 556, 566 (6th Cir.1999) (quoting McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir.1997)); *see also* Brindley v. McCullen, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); Rice v. Comm'r of Soc. Sec., 169 F. App'x 452, 453 (6th Cir. 2006). Here, Plaintiff has not provided a developed argument substantiated with pin citations to the record demonstrating that Plaintiff alleged the side effects of his medications is an issue. Therefore, this claim is deemed waived.

Notwithstanding, Plaintiff would not have been entitled to relief under this claim. First, Plaintiff's reliance on SSR 96-7p is misguided because it was superseded by SSR 16-3p effective March 28, 2016.[10] Notably, SSR 16-3p instructs that the side effects of any medication taken by the claimant is one of the factors, set forth in 20 C.F.R. § 416.929(c)(3), to consider in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017). But both Plaintiff and his wife denied medication side effects in several reports submitted to the agency in support of Plaintiff's disability claim (*see* Tr. 352, Disability Report – Appeal - Form SSA-3441, listed his medications but left blank the boxes provided to list "Side Effects You Have"); Tr. 358 (Pain Questionnaire, indicating "none" in spaces provided to list medication side effect(s)); Tr. 368 (Plaintiff's wife's third party Function Report, checking "No" in response to "…do any of the medicines cause side effects?"), Tr. 376 (Function Report checking "No" in response to the question, "[D]o any of your medicines cause side effects?"). Additionally, during the administrative hearing, Plaintiff testified that he did not know of any side effects from his medications (Tr. 59). Thus, Plaintiff affirmatively indicated there were no side effects from his medications to consider in evaluating the intensity, persistence, and limiting effects of his symptoms.

While Plaintiff did testify that he experienced dizziness (Tr. 52), the ALJ expressly found it is a non-medically determinable impairment because "there was no formal treatment for this condition in the records, nor did the claimant ever include this allegation in his application for Social Security benefits" (Tr. 18). Due to an absence of proper objective medical evidence to support the allegation, the ALJ appropriately did not factor it into the RFC findings (Tr. 18-19).

---

10 https://www.ssa.gov/OP_Home/rulings/di/01/SSR96-07-di-01.html

15

Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion . . ." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004) (cleaned up).  Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ.  42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law.  Id.  After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence in the record and correctly followed the applicable law.  Therefore, Plaintiff is not entitled to relief with regard to his challenge.

ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

January 17, 2024

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:       Counsel